Please call the next case. 1-12-28-52 Aminas v. Amiras v. Colón-González Counsel, you may proceed. Good morning, Your Honors. Counsel, may it please the Court. My name is Kyle Kaczmarek and I'm here appearing for the appellant Aminas Armiras. This case is not an odd lot case. This is a case where permanent and total disability was established by the preponderance of the medical evidence. Under Federal Marine Terminals, Inc. and numerous other cases, the case law is clear that permanent and total disability can be established, first, number one, by the preponderance of medical testimony, or alternatively, under odd lot. The case law states, if the preponderance of medical testimony establishes permanent and total disability, there is to be no consideration under an odd lot theory. In our case, the arbitrator, in his decision, made clear that he was facing his decision of permanent and total disability based on the preponderance of medical evidence. However, and actually what we have in this case, is medical evidence of permanent and total disability that went completely unrefuted, unrebutted, and was 100% one-sided. In Appellant's brief, pages 11 through 13, I detailed a number of the office notes from the main treater, Mr. Amiras, who is Dr. Ronald Michael, a neurosurgeon. Throughout the entirety of his treatment, over a period of five years or longer, he repeatedly stated that Mr. Amiras was permanently and totally disabled because of his cervical condition and right shoulder should remain off work. And he never, ever lifted the work restrictions. Dr. Michael clearly opined that the claimant, your client, was incapable of performing any work. However, that was contradicted by the FCE, was it not? Well, I don't believe it was contradicted by the FCE. Getting back to the argument that we just heard about the FCE, the FCE itself is not medical evidence. Did it come into evidence in this case? You've been hearing us discuss this. Yeah. There was no foundational objection made to the report. Well, so it's in evidence. Can't the commission consider it and give it what weight they believe it's entitled to? I think the examiner performing the FCE himself states that it should not be treated and its conclusion should not be accepted solely as evidence of what he purports in it. It's in the report. It says that? In his report, he states, the examiner states, that he recommends a period of work conditioning to address strength and functional deficits so that the employee may safely return to work per medical doctor's recommendations. Yeah, but the examiner, the FCE evaluator, the rehab specialist, doesn't say his report isn't worth anything, does he? Well, I don't think that it's necessarily necessary to say that the report is worthless. It's a tool to be used by a medical doctor insisting him in determining what his patient, with a specific condition, in this case a two-level cervical fusion, can tolerate. Let me ask you this. Sure. Point of question. If the FCE and the doctor's opinion are contrary to each other, are you saying it is a matter of law he must give more weight to a doctor's opinion than the FCE report? I would absolutely say that. Do you have any case law that stands for that proposition? I don't have any case law that's specific to an FCE versus a medical doctor's opinion, but certainly the functional capacity evaluator, his qualifications were not put into evidence, but based on how he signs his name, it's assumed he's not a medical doctor, he's not a neurosurgeon. He's never performed a cervical fusion on an individual. He's never treated a patient that's had a cervical fusion. Well, that may all be true, but under the well-settled doctrine, it's up to the commission to determine the weight and credibility of the evidence. Let me ask you a different way. Is there any legal impediment to the commission believing the FCE over the doctor's opinion on whatever basis they come to that conclusion? I think the problem is if there's conflict between numerous medical doctors' opinions in the record and then all that's offered by the respondent is a functional capacity exam that just throws out raw data, just throws out numbers, this person could lift this weight this many times, I don't think that is sufficient enough by itself to override a medical doctor's opinion regarding his own patient that he's seen in serial exams over five years who says this patient cannot return to work. Well, this is a problem we're having. A health can't return to work because of his medical condition. Correct. Okay. But isn't the commission really, in this whole scheme of things, supposed to be the knowledgeable one about whether a claimant can work or not? And we're asking the question in the degree to which they are impaired. Isn't that within their purview and expertise? Well, I think both the functional capacity evaluator and Dr. Michael both acknowledge that returning to work in a patient like Mr. Armira's involves safety concerns. He's got a serious condition. The FCE examiner stated in his report he should have work-hardening address functional deficits so that he may safely return to work per MD's orders. So we can't have the commission substituting its opinion on, you know, workability in place of a medical doctor. And I don't have the cases in front of me, but I know I cited cases in my brief to that effect. So he can safely return to work implies that he can work, right? Correct. He wouldn't be permanently and totally disabled. But the FCE did not say that he could safely return to work. Let me ask you this. Have you heard of the Weston Hotel case? I have. Okay. Doesn't that stand for the proposition that merely proffering medical evidence of permanency is insufficient to establish entitlement to a permanency award? Doesn't that what Weston Hotel stands for? That stands for that only in an odd-lot case and only when referring to the burden shifting that happens in odd-lot theory cases. In that case, in the Weston Hotel case, the petitioner and the respondent had conflicting medical evidence about whether there was permanent and total disability. And so they treated it as an odd-lot case and they made an odd-lot argument. The petitioner in that case proffered their medical expert as saying he's permanently and totally disabled as evidence that are in order to shift the burden to the respondent in that case. But in the Weston Hotel case, the doctor testified like a vocational expert. He gave odd-lot type testimony, right? Right. I believe it was Dr. Koh in that case. And the ultimate quote from that case says, mere proffering medical evidence of permanency is insufficient to shift the burden to the employer in odd-lot cases. So if you take it out of the context of odd-lot cases, then you're saying the converse must be true. You proffer medical evidence. The commission has to accept it. That is. That's the Hook case. Is it really and truly unrebutted here because of the FCE? Well, and that gets to the point. The FCE does not rebut the medical evidence in this case. The FCE merely offers what the examiner opines my client can lift in basically a physical therapy or gym set. He can lift 20 pounds over his shoulder. I saw him do it 10 times. He lifted 30 pounds over his shoulder five times, and then he got tired. That is not the same thing as medical evidence. It might be a tool that a doctor can rely on and interpret whether it's valid or not or applicable to a person with a two-level cervical fusion or not, but it's not in and of itself medical evidence. And it's actually in the FCE is actually in conflict with other doctors in this case besides Dr. Michael. In early 2007, the patient was seen by Dr. James Horne, an orthopedic surgeon, who said that the patient should avoid lifting 20 pounds and any activities over his head or above his shoulder. But then you have an FCE where he's saying, well, I saw him do it. But that was against medical advice. Just because an FCE examiner puts a patient through a series of exercises where he does that doesn't make it medically acceptable. Doesn't mean he can then safely return to work and lift 20 pounds over his shoulder when doctors are saying he should not be doing that. It's not the same as medical evidence. In this case, the respondent had every opportunity, if they disagreed with Dr. Michael's continuing opinion of workability and permanent total disability, to present their own experts, their own qualified medical experts to rebut his testimony. They attempted to. They sent him to an IME on February 12, 2007, Dr. Espinoza. He concluded that the petitioner needed a right shoulder MRI, consultation with an orthopedic surgeon, further treatment. He never reexamined the patient after that. He explicitly said he did not find that the petitioner was MMI. And he specifically said he could not, at that time, give any opinions regarding workability or permanency without further information. They never sent the patient back to him for him to update his opinion. Same thing with the August 21, 2008, independent medical exam by Dr. Mark Breslow. He recommends, first and foremost, that he needs further orthopedic treatment for his right shoulder. He's suspecting at that point in time that the patient has a torn labrum and possibly needs further surgery. And then he states, only following treatment by another orthopedic surgeon, a functional capacity exam, and work hardening program, could I render any further opinions in this case. That was the extent of the medical evidence they submitted. It was completely open-ended, and none of it rebutted that which was put into evidence by the petitioner. And so the Hook case says, Hook Bush was an industrial commission, a Supreme Court case, states where medical testimony is unrebutted, leaving no conflict in the medical testimony for the industrial commission to resolve, it is against the manifest weight of the evidence for the commission to disregard that unrebutted medical evidence. That's a Supreme Court case. And so, here, it's not an odd lot case. The arbitrator never used the term odd lot in his decision, yet the commission somehow took a step and said, the arbitrator made a mistake by viewing this as an odd lot, which he never did. That's why this is against the manifest weight of the evidence case. The commission misunderstood the issues, decided to resolve evidence, or reportedly conflicts in evidence that simply did not exist. The evidence was unrebutted. Okay. Counsel, where in your appendix is the arbitrator's decision? Excuse me? Did you include the arbitrator's decision in your appendix? I'm not going to make you look. The answer is no. Okay. Okay. And it needs to be included as part of the Supreme Court rules. I apologize.  I guess it's not. It has to be in the appendix. Yes, I see we have the commissioner's decision. Okay, counsel. Thank you. Your time is up. Thank you. You have time and reply. Counsel, you may respond. Good morning. May it please the court, counsel. My name is Lisa Barbieri, and I represent the Palmer House Hilton in this manner. The only issue that we see here is the award of the permanent total disability. The commission found that the only basis for the award of the permanent total disability was Dr. Michael's March 23, 2009, note where he stated the petitioner was currently totally permanently disabled. The commission found that this note was not enough to establish a permanent total disability award. Do you agree that a petitioner can't establish permanent total strictly through medical testimony? I mean, if doctors testify this man's permanently totally disabled, that's one of the ways you can prove permanent total disability. But that's not the question. Do you agree with that? Yes, I do agree with that. That's a different analysis than odd lot. Correct. Now, why then, I mean, does it make any sense for the commission to jump to an odd lot analysis after, you know, citing the permanent total disability testimony by the medical expert? I mean, didn't the arbitrator and the commission in this case mix up those two concepts? I don't see that the arbitrator and the commission mixed up those. I guess I'm not really understanding your question. Did the commission ever address whether or not the petitioner had proved permanent total disability strictly through medical testimony? Yes, they do. Can you direct me to where that's at? Well, on their decision, on the first page of their decision, although Dr. Michael O'Kind, the petitioner, is totally permanently disabled, merely they go on to cite Weston. Does that make any sense to you, that they'd start citing Weston there? I mean, evidence of permanency is different than medical testimony of permanent total disability. Do you agree with that? I mean, why would they even have this quote out of Weston, which was an odd lot case, in discussing whether or not, in this case, the claimant proved permanent total disability through medical testimony? The petitioner here tried to prove permanent total disability only through using the medical evidence. That's all they used. What does that have to do with it? Any burden shifting or odd lot or anything? Right, well, the burden didn't shift yet. It's the respondent's position that they only offered that medical testimony. That was not enough to shift the burden to the employer. If the only evidence in the case was a doctor saying, this man is medically, permanently, totally disabled, and that was the end of the case, you wouldn't have to do anything. But that's not the case here. There is additional evidence here. In this case, the doctor did comment on the FCE. The doctor did say in his note, if he does find another job, I want to review it, inferring that he is employable. Well, I understand. But I'm concerned with the analysis that both the arbitrator and the commission did here. Why did they jump into this odd lot analysis? They never analyzed whether or not there was proof of permanent total disability by medical testimony. I guess I can't really answer why the commission jumped into that analysis. I mean, it's the respondent's position that that's the correct analysis. That's the analysis that should have been used here. What is the correct analysis? That we should have gone into the West and looked at all that they have, all the evidence that they gave was medical evidence. Right. They were all in on medical evidence there. They were all in on medical evidence. And so why doesn't the carrier of the day, when they have the doctor's opinion, he's totally incapacitated? Because there's additional evidence. There's an FCE that the doctor commented on. The FCE didn't just go in bare bones, as Petitioner cited. It went in. The doctor commented on the FCE. He didn't dispute the FCE. He didn't argue with the FCE. He didn't say it was invalid. Then he goes on to say, if this person finds a job, I want to review it. What about his argument that you shouldn't exalt an FCE over opinion of a medical doctor? The doctor had every opportunity when he reviewed that FCE. He could have said, I don't find it valid. I want it done again. They could have deposed the FCE person that did the exam. That was never done. This doctor who testified or who gritted the opinion that he's permanently totally disabled had reviewed the FCE. Correct. And evidently it didn't influence him. He still expressed the opinion that the man was permanently totally disabled. But then goes on to state in the same doctor's note, if he's able to find a job, I want to review it, inferring that he is employable. The commission noted the lack of any evidence of a vote, Counselor, any vocational evaluation. Petitioner himself admitted on cross-exam that he made no attempt to obtain employment. At this point, it's Respondent's position that the burden is still on the petitioner to prove he was unemployable in a reasonably stable job market. If, in fact, the medical testimony doesn't carry its date. Correct. You wouldn't get into that unless you found the medical evidence insufficient. If it's permanently totally based on patterns of medical evidence, he doesn't get into a job search, correct? Correct. It's an alternative way of doing it. Right. I mean, this is a case where the claimant wasn't trying to prove odd lot at all, right? But the commission weighed the evidence, and the commission didn't find that the manifest weighed the evidence. He still got it. He still ended up getting an award. It's not like he got a zero. He just didn't get a permanent total disability. I understand that. But, I mean, the claimant's theory was not that he was odd lot. The claimant's theory was that he was medically permanently totally disabled. And so, you know, didn't the commission here take a medical permanent total case and analyze it under odd lot theory? I mean, of course he didn't prove odd lot. He wasn't trying to prove odd lot. I think the problem is that last doctor's note, their own trainer says he's permanently totally disabled, then turns around and says he's got an FCE that says he can't work. The FCE doesn't say it's sedentary. It doesn't say he can't work. The FCE... Tell me where in the commission's decision they relied on that to say that he failed to prove medical permanent total. Well, they go into the second paragraph. The commission vacates the arbitrator's permanent total disability award and finds petitioner permanently partially disabled. They find the only basis for the permanent total disability award was Dr. Michael's March 2003... March 23, 2009 note, which stated petitioner continued to have severe neck pain and he was currently total permanent disabled. The commission found this note was not enough to... This note insufficient to establish a permanent and total disability award. And why was it? They go on to explain why, because it doesn't fit... They analyze it under Weston Hotel and an odd lot theory. And they weighed the evidence and they didn't find it was enough. I mean, it sounds to me like the commission is saying, you know, medical testimony of permanent total disability is never enough by itself to prove permanent total because of an odd lot analysis. But I think the problem is that you've got money medical records. You've got a medical record that says he's permanently totally disabled. But we have an FCE which does have a valid level of that he could work. And then in the same note you have the doctor saying, you know what, if he can find a job, I want a review. I hear you saying that. I just don't see the commission saying that. If they made that explanation, it would make more sense, wouldn't it? Probably. Well, let me ask you, is there a body of case law, do we affirm or reverse based on the reasoning of the commission or do we affirm based on the result to which they've reached? Do you understand the difference? Yes, I do. There's a body of case law, I think, that says that. Oh, I would say both. I mean, ultimately you look at the reasoning and then... Well, we can affirm on any basis in the record even if they're totally wrong in their reasoning, correct? Right, right. Yes, correct. I just thought that as an abstract principle. Yes. Okay. I mean, obviously in this case we request that the court affirm. We feel that it's not against the manifest way to the evidence. Okay. Thank you, counsel. You may respond. Again, I would just emphasize, this is from the commission's decision, second paragraph. They state the only basis for the permanent and total disability award was Dr. Michael's March 23, 2009 note, which stated he was permanently and totally disabled. It's completely false. I've cited in my appellant's brief, pages 11 through 13, not even all of the notes, just several dozen of the notes, where he maintained that opinion, continued that opinion. To this day has not lifted him off work restrictions. So at this point in time, for my client to engage in a job search, for my client to return to work, he would be doing so against the medical advice of his treating neurosurgeon. And that's why the commission's decision to, for some reason, jump into odd lie when the totality or the entirety of the medical evidence was that he was permanently and totally disabled was completely erroneous. I don't even know if saying manifest way to the evidence is correct in that there was no evidence to weigh. It was exclusive and one-sided by his medical doctor saying that he was permanently and totally disabled and should remain on permanent work restrictions, which the case law says is the number one or one way to prove entitlement to permanent total disability benefits. The alternative is odd lot, but we didn't need to get to the alternative. And the arbitrator's decision didn't consider odd lot and didn't get into that alternative. The arbitrator, once I got a copy of the arbitrator's decision, did discuss some odd lot type stuff, too. He talked about valley mold and... He cited odd lot cases, which is, I agree, confusing. But the final paragraph, the majority of his opinion, decision, cites all of Dr. Michael's ongoing notes and treatments where he emphasizes over and over again his opinion that he's permanently and totally disabled. The final paragraph of the decision from the arbitrator states, quote, based upon the medical records and doctor's medical opinions, the various medical tests and results, and the testimony of petitioner which arbitrator deems forthright and credible, the arbitrator finds the petitioner is totally and permanently disabled. I mean, he's got a lengthy decision. He doesn't use the word odd lot a single time. It wasn't an odd lot decision. It was a decision based on the totality of unrebutted medical evidence. Well, and then the commission, in their opinion, says the arbitrator decided he was an odd lot. Which I think was a mistaken interpretation of the arbitrator's decision. I don't think that's at all what the arbitrator decided. And we're still left with the Hook case. The Hook case says, because we still don't have any rebutted medical evidence in this case. And the Hook case says, if you don't have medical evidence that's refuted, there is no conflict for the commission to decide. And they have no role. And if they disregard the unrebutted medical evidence, that's always against the manifest weight of the evidence. What about this? Does Hook stand only for the proposition that when medical expert expressly disclaims any opinion as to disability, other medical testimony as to disability may be deemed as unrebutted? You may be reading the Hook case a little more broadly and in that context. My understanding of the Hook case is that there was a psychiatric neurological expert who testified that the functional limitations of the petitioner in that case was based on a neurosis, permanent neurosis. Then they went to an orthopedic surgeon. The orthopedic surgeon said, I find no orthopedic reason to explain his limitations, but I don't have an opinion or I'm not going to comment on the other doctor's opinion. I'm not making a psychiatric evaluation. And the commission ruled, well, then that's unrebutted. The psychiatric opinion is unrebutted. In this case, we have even less than that. Nobody tried. There was no orthopedic surgeon that they hired that even tried to comment upon or rebut or disagree with Dr. Michael's opinion. In fact, of the four or five other orthopedic surgeons that Mr. Amiris saw, they were very deferential to Dr. Michael, always referring him back to him for continuing treatment on both his neck and shoulders. So our opinion is that the decision of the commission should be reversed, the arbitrator's decision reinstated, and that permanent total disability be found on unrebutted medical testimony. Thank you. Okay. Thank you, counsel. Thank you for your arguments. This matter will be taken under advisement. This position shall issue. We'll stand in recess until 1.30.